and call the first case, Brinkerhoff Restaurants v. Castle Pines Golf Club, number 251032. Please approach. Good morning, your honors, and may it please the court, my name is Mark Levy, and I represent the Castle Pines Golf Club. Castle Pines is the owner of the renowned Hummingbird Mark that it has used for golf club services, including bar and restaurant services for over 40 years. This is a trademark case regarding Brinkerhoff's use of the word equivalent of the Hummingbird Mark as the dominant part of its mark for a bar and restaurant business located less than four miles away from Castle Pines. Castle Pines moved for a preliminary injunction, the district court denied that injunction, and Castle Pines appealed. Castle Pines asked this court to reverse and remand to the district court. Today, yes, your honor. Counsel, which of the marks is Castle Pines challenging on appeal? Are you challenging both the composite mark and the word mark, or just one or the other? We're challenging both, and both the composite mark and the word mark, which I think was clarified in the briefing. Okay, and was that raised in your opening brief, the composite mark? Yes, it was. Okay. And in addition to that, just so that it doesn't get lost, there is a third mark that is at issue, and this is footnoted in our opening brief or the reply brief, which is the original mark, which is just a Bar Hummingbird logo mark, which Brinkerhoff applied to register. It applied to register three marks, the original Bar Hummingbird logo, the new Bar Hummingbird at the Brinkerhoff logo, and the word mark. All three of those were applied for, which required a declaration of a bona fide intent to use in commerce of those marks, and all remain pending before the Trademark Office. Now today, I'd like to address three key legal errors that the district court made. The first error concerned the most important factor of the similarity of the marks. The district court's conclusion that the marks at issue share only nominal, if any, similarity contradicts the district court's finding that the marks have identical dominant components and shows that the district court misapplied the law that required it to give greater weight to identical dominant components. So counsel, I hear you emphasizing misapplied the law, but isn't this a factual question, and don't we defer to the district court's decision? The fact, there is a, the similarity of the marks, the determination of the similarity of marks is a factual question, but to get to that fact requires application of legal principles. And the problem here that's very clear in the district court's decision is that its ultimate conclusion that the marks share only nominal similarity, if any, contradicts its earlier finding that the marks have identical dominant components. And you say that's a legal problem? Yes, it's a legal problem because. Why isn't that a factual? Maybe the district court got the facts right one time and got the facts wrong in another time, but I don't understand how that turns it into a legal conclusion. Well, I think there are two ways of looking at it, Your Honor. One way of looking at it is if you look at it as a factual finding of similarity of the marks, and its ultimate conclusion was nominal, shared nominal similarity, if any, then we would say that that is a clearly erroneous factual finding on the assumption that it applied the law correctly. And by the law here, what I'm referring to are the two legal rules that this court has announced and applied, that similarities of the marks get more weight, and the dominant, and in addition, the dominant parts of each mark also get more weight. So if you assume that the district court applied the law correctly, then the district court's conclusion that the marks share nominal similarity, if any, when the marks, according to the district court itself, shared identical dominant elements, shows that the factual finding is clearly erroneous. We've looked at it through a different lens, which is that although the district court acknowledged the legal rules, there's no way you can find that the marks share nominal similarity, if any, unless the district court did not apply the law, which is why we looked at it as a legal error. Counsel, let me ask you this. I think Judge I has this right about it being a factual question, but regardless whether it's a factual question or a legal question, as you say, don't you have a problem on this dominance issue with our precedent in King and Mountain Sports versus Price and Corp? Well, Your Honor, I don't think we have a problem there at all, and the reason is that in the district court's decision, in the appendix, page A1238, the district court found as a matter of fact, which to which this court should give deference, that the Brinkerhoff mark, that the word Hummingbird is a predominant element of the Hummingbird mark. The district court's already made that finding. So the problem is- But wasn't one of the thrusts of the district court's analysis is that you look at the depictions as a whole. Wasn't that the thrust of the district court's ruling? Well, you do look at them as a whole. That is also a principle of law that's appropriate. We're not saying that any element of the mark should have been ignored. The problem here is the district court found, where I quoted from the decision, that the word Hummingbird was the dominant, predominant element of the Brinkerhoff mark, and then somehow came to the ultimate conclusion that the marks share only nominal similarity, if any, which is directly contradictory. Because remember, too- Well, couldn't it be because it didn't feel that Hummingbird was the predominant feature of your client's mark? Well, actually, Your Honor, no, because the district court also accepted our argument that the Castle Pines mark, which is an image of two hummingbirds, is equivalent to the word Hummingbird. The court accepted that in the decision, and that's the correct decision. But that doesn't mean that, just because it was a part of it doesn't mean it was the dominant part. Oh, Your Honor, the Castle Pines mark, that is all of it. The Castle Pines mark is an image of two hummingbirds. That's all it is. Well, thank you, I get that. Yeah, so what you have here, just to cut to the chase, you've got the Castle Pines mark, which is equivalent to the word Hummingbird. It's not, Hummingbird isn't just the dominant part of the mark, it is the mark. And you compare that to the Brinkerhoff mark, which the district court found that the predominant element of that, in this case, the logo mark, was Hummingbird. And there's no way to make that consistent with its ultimate conclusion that the marks share only nominal similarity of any, and the similarity of the marks factor favors Brinkerhoff. Makes no sense at all. So whether you look at it as a- You know what, help me with this. Why doesn't it make perfect sense under King of the Mountain? Because you have to look at the whole mark? It makes perfect sense with King of the Mountain. You can have the same words, but the marks are not that similar. I think, because if memory serves, that the words in King of the Mountain were not determined to be the predominant elements of both marks. That's the problem here. Of course you look at the whole- No, you do have that wrong. It's because when the court was talking about that, it says, assuming the phrase King of the Mountain constitutes the dominant portion of the defendant's logo, as plaintiff argues. So that's exactly what they were saying. It was the words. Well, Your Honor, I would say in this case, the differing factor in this case is that the district court came to the conclusion that the marks share only nominal similarity, and that is either a clearly erroneous conclusion if it applied the law correctly, or you have to say that the district court didn't apply the law correctly. Either way, the court's claim if given that, at a minimum, that requires reversal and remand to the district court to reconsider the similarity of the marks factor in light of that very clear error. I have a question. You've mentioned geographic proximity in your argument today, and you also mentioned it several times throughout the briefing. What role does the geographic proximity play in this case, or where does it fit in to the analysis? Thank you, Your Honor. It fits in, in connection with the similarity of the goods or services issue. There is some, I don't have it right off the top of my head, but in our briefing, there is some authority for the fact that you look at geographic proximity in considering the nature, the similarity of the goods and services used in the case. Well, just to follow up on that, then how about the fact that there's golf and then there's a bar? I mean, right? Isn't there a difference there? Well, I would say no, Your Honor, respectfully. So, for two reasons. One is that the golf services for which Castle Pines Mark is registered encompasses bar and restaurant services for purposes of the registration. But isn't it predominantly golf? It is a golf club, but it also, there is, if you look at the underlying record, there is undisputed evidence, incredible evidence of the predominant use of the Hummingbird Mark in connection specifically with the bar and restaurant services offered by the club, which have been offered for over 40 years. That, so in other words, you don't even have to, you don't have to just keep your laser focus on the registration. We have common law rights in the use of the mark in the bar and restaurant services at the club. Those services are, and this is another place where the district court erred. The district court found that the services were dissimilar. That's a clearly erroneous finding. There is, it's undisputed that Castle Pines is providing, has provided bar and restaurant services under its mark, just like the Brinkerhoff intends to provide bar and restaurant services at its restaurant under its mark. The fact that those services at Castle Pines are offered at a private membership club doesn't make the services any more different. Now, that, I'll give you a silly example. If you go to, you know, Costco as a membership club, you may go to Costco to fill up your car at the gas station. Those services, gas station services, are the same as the gas station services provided by the Shell down the road that's open to the public. The fact that Costco's a membership club doesn't make the services any, you know, any less similar. Now, the fact that it's a private membership club, I'm not saying is material, it's relevant. It should be considered, but the services are the same, and the district are clearly erred in finding that they were not. Council, what do we do with the proposition of the Patent and Trademark Office as these two different categories, as a category of country club services and as a different category of bar and restaurant services? Those categories. They say we're dealing with that issue with the application by the Brinkerhoffs. Those categories are purely for it. Nothing ever came up, and nothing ever came up as to similarity. First of all, the classification system for the Trademark Office has absolutely no substantive bearing. That is for administrative purposes only, and it has absolutely no bearing on the similarity of the goods or services. That is a complete red herring, Your Honor. And do you have authority with that effect? Yeah, it's in our briefing on that. I don't have it. Your authority that the Patent and Trademark Office categories are wholly irrelevant. There's authority in your brief for that. Yeah, there is. They're administrative, and I can... That's fine. If it's there, I'm fine with it. Yeah. An additional issue you raise in your briefs is the district court's analysis of actual confusion, and I just want to make sure I didn't miss it. There was expert testimony offered at the district court level, but I didn't see any reference to it. Did the district court judge make any findings about the experts in the order? The district court... There was a survey offered by Brigham Young presented by an expert. We had an expert rebut that survey evidence. The district court completely avoided it with a 10-foot pole, didn't touch it. The reason why we think he didn't touch it is because our expert very persuasively explained that their survey wasn't worth the paper it was printed on because of defects in its administration and how it was made. All right, thank you. Counsel, your time has expired. I see that. You can conclude in one sentence. In one sentence. Your Honors, I was unable to get to the other two errors, which is fine. It's in our briefing, but we believe that once the errors are corrected, what you're left with is a very strong case of likelihood of confusion that the district court just simply missed. And we ask for reversal and remand for the district court to reconsider this in light of your opinion. Thank you.  Thank you. Please proceed. Good morning, Your Honors. May it please the court. My name is Jessie Pellant and I am here representing Brinkerhoff Restaurants, LLC, for the NLE. With me is Tim Sullivan, also Studio IP. The policy behind trademark law is to protect the consumer from confusion. Trademark law is distinct from other forms of intellectual property as it is concerned with the consumer and the possibility that the consumer might be mistaken as to the source or sponsorship of its goods or services that it has paid for in the marketplace. The analysis to determine if a likelihood of confusion exists is a complex, multi-part factual analysis trying to get to whether a consumer would or would not be confused. The district court did a careful analysis of all the factors and came to the conclusion that there was no evidence of a likelihood of confusion in this case. Castle Pines is proud of their brand, but that does not give them the right to tell businesses in the area what they can or cannot do with their branding without a legal basis to do so. Counsel, can I get you to start with your opponent's argument that there's an inconsistency, which he claimed was a legal error, in the findings? Sure. We believe that under the law, a preliminary injunction decision is reviewed under abuse of discretion standard and all that was found under the court, under the likelihood of confusion analysis, were findings of fact which are to be reviewed under the clearly erroneous standard. Okay, then why aren't there two factual findings that are inconsistent? I believe there are not factual findings that are inconsistent. I'm just asking you to respond to his primary argument. Yeah, okay, understood. Under the Pegasus case, Your Honor, I think that is where they're leaning into the argument that when you see something, it brings up that same connotation, and the court actually did acknowledge that the hummingbird is itself the largest portion of this mark, so they considered that case, they considered that analysis. However, given that the actual whole of the likelihood of analysis, likelihood of confusion analysis, is to actually look at a comparison of the composite mark as a whole and consider all of the factors at once, the court did that and yet still found that there was not a likelihood of confusion, given all of the factors put together. But saying the main part of the mark is the same, how can you have an overall determination that there is no similarity? Sure, and the court went through a detailed analysis looking at the fact that one hummingbird is of watercolor and it is forward-facing with wings outspread. There's only one, not two. It's not a geographic image. It's not two from a side profile. There's no circle surrounding the hummingbird that's presented. There are words presented with our client's mark, which is Bar Hummingbird at the Brinkerhoff. Also noting that at the Brinkerhoff, while it is a house mark, it does have significant strength. There was evidence in the record that our client has 700,000 customers come through its doors every year, whereas Castle Pines has 400 members. And even with the golf tournament that came through, the BMW tournament, there's evidence in the record to support that there were 100,000 people that came to that versus our client's 700,000 that come through their doors. There is some weight given to the house mark here with Brinkerhoff, such as the Kellogg case. Well, how did, so I guess your argument is the factors that you just listed outweigh the fact that the primary similarity is the hummingbird. Absolutely. Okay. So my question kind of ties into that. Which mark do you understand to be being challenged on appeal? Do you understand both the composite and the word mark, or one or the other? Your Honor, I believe that they have focused on the word mark because they have really leaned into the fact that the words themselves equate what the image of Castle Pines' composite mark is, logo. And did the district court separately analyze the word mark versus the composite mark? Like you just went through the description of how the composite mark differed from Castle Pines' mark. But did he also analyze the difference between Castle Pines' mark and the word mark? Yes, Your Honor. The district court did look at the word mark as it's part of the logo and the words themselves. So the court analyzed both. But a word mark doesn't have any font or stylization to it, is that correct? Correct. Okay, thank you. You're welcome. I also have an additional question. So the district court went through the various factors that are outlined for likelihood of confusion. Is the failure to consider any one of the multiple factors in the likelihood of confusion analysis automatically constitute reversible error? No, Your Honor. And what's your authority for that? The authority is that in the context of the plan of SMART, and if it's in your brief, I'm not trying to waste your time. Oh, sure, sure. Yes, I mean, it's in our brief, but I was trying to find in actually the King of the Mountain case, where it does talk about that all of the factors are to be, the strength of the plan of SMART can outweigh any other factors. And it is true that all of the, there's not one determinative factor that it is, and Sally Beauty is probably the best authority for that. Thank you. But can I ask you, those cases don't say that you can just not talk about a factor, right? Do you have authority for that? That you cannot discuss a particular factor. Exactly. The court did go through every factor that is actually to be determinative for to find likelihood of confusion or not. So we can look at each of those factors that the court looked at, but they did consider the strength. They discussed that even if the court, even if the mark for Castle Pines has strength, it is limited to the golf industry. The court, during our preliminary injunction hearing, also discussed the conceptual strength of the mark and discussed how it would lean towards finding the mark to be arbitrary. The court did look at the site sound and commercial strength and impression of the mark as a whole. The court looked at overlap in services. The one consideration that the court. Well, the counsel effectively, and it's not unusual, that the court didn't really consider actual confusion because there was no acceptable evidence where there was actual confusion. So even in this case, there's no consideration of that factor, correct? Correct, I would say the court did consider the survey evidence that was put forth, which would give a reading of whether or not there is likelihood of confusion possibility, whether there is actual confusion as it stands now because the marks were presented to the survey participants in an actual ever ready test to see whether or not there was likelihood of confusion presented with the people that were surveyed. And you're saying the court relied on that survey? No, the court took it into its overall analysis as it was part of the preliminary injunction hearing. Did he make any findings, though, about? I'm asking because I don't recall seeing any mention of the expert testimony in reviewing the district court's opinion. I will look briefly to see if I see anything that jumps out as well. Well, you agree with this, don't you, counsel, is that since Bregerhoff had not been in business using this mark, there could be no confusion there. And so the only confusion would be from showing the marks to the people and having them opine on where they thought it was confusing. That would be the only way to do so, isn't that correct? Correct. And the court didn't accept that? Yeah, considering the courts above, this is what the court states regarding the lack of consumer confusion resulting from the marks. Here's my point. It's not unusual for courts not to talk about the lack of actual confusion when there's insufficient evidence of that.  Yes, Your Honor. They do note that the other factors need only minimal discussion because of their finding of the lack of similarity between the marks and the lack of intent to tread on the goodwill of the golf club as well.  The district court did not err in their decision and I would like to note that the Lanham Act does state that a likelihood of confusion is as to affiliation source or sponsorship. And the court did in fact look at the strength of the marks and did in fact discuss and cite to the Kellogg case noting that even if there is a strength of the mark in this case for the sponsorship analysis that it is only to golf. There was not sufficient evidence in the record to support that the Castle Pines Golf Club mark is otherwise as strong of a fanciful mark such as in the Pegasus case. Am I correct that there was, first of all, there was live testimony in the evidentiary hearing, correct? Yes, Your Honor. There was also a presentation of videos of the environments of both. Yes, Your Honor. At least the entryway to the golf course. Where the restaurant was gonna be located, is that correct? Yes, Your Honor. Yes, the video actually depicted what the drive is like going to the golf club. There are several stop points where you would have to either be a member or give a member's name in order to pass through the gates. It is a private course, and members of the public are not allowed to even drive up to the golf course unless you are invited by a member. The front of the bar at the Brinkerhof is connected to the Brinkerhof restaurant. As you walk up to an arch, there's both logos are presented at the front entrance, and it also shares a parking lot with the- What do you mean when you say both logos? Sure, the Brinkerhof restaurant. The Brinkerhof restaurant is connected to the Bar Hummingbird at the Brinkerhof. And so as you walk up, you see both of those logos as a consumer as you walk up to that archway from a public parking place. When you say both, what are you talking about? The Brinkerhof restaurant or the bar? Yes, the Brinkerhof restaurant and the Bar Hummingbird at the Brinkerhof. Logos are both presented to the consumer as they walk up to the restaurant, and it does share a parking lot. Oh, sorry, go ahead. There's also one in their other restaurants there. Yes, Your Honor. Yeah, it shares a parking lot with Savina's Mexican Kitchen, which is also owned by the Brinkerhof restaurant family. Those factors, I believe, were weighed heavily by the district court in determining the amalgamation of evidence that really supports that a consumer would not be confused as to the source of this particular bar and restaurant because of all of those factors that a consumer would be presented with as they are accessing the restaurant itself. Getting back to the location of the Brinkerhof facilities, that's not, is it in a strip mall? It is across from a strip mall, yes, Your Honor. Is it across from a strip mall? It's not part of a strip mall? Correct, Your Honor. Thank you, Your Honor. I did want to point out one thing that Council discussed in terms of the fact that it is undisputed that the golf course is offering bar and restaurant services, and at no point has Castle Pines Golf Club registered for bar or restaurant services, and those services, again, are not available to the public. Someone, there was evidence in the record that someone who is a member of the public would have to be escorted with a member of the golf club and wear a particular colored jacket even to attend one of the restaurants there. Counsel, your time has expired. You can give us a summary in one sentence. Sure, yeah, in conclusion, the district court did not err in their decision. Castle Pines presented no evidence supporting potential confusion. The district court had sufficient basis in facts to make its findings, and because the district court did not abuse its discretion in finding that Castle Pines failed to make a strong showing of likelihood of success on the merits, we ask that this court affirm the district court's decision. Thank you. Thank you. Thank you. Your Honor, excuse me, may I have one minute for a vote? No, thank you, though. The case stands submitted, and we are going to go to the next case. Thank you for your helpful arguments.